UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 5:08-CV-11-FL

| | |
|---|---|
| MELISSA S. KENNEDY, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Melissa S. Kennedy ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant was originally awarded disability beginning 14 April 1999 for listing-level chronic renal failure. (R. 21, 49). On 7 March 2003, Claimant was found to be under continuing disability. (R. 23). As the decision of 7 March 2003 is the last most favorable action on Claimant's disability claim, it serves as the comparison point decision. (R. 15, 66). A continuing disability review concluded Claimant's disability ceased effective January 2005 based on a

finding that Claimant's condition had improved and she could perform light work with some limitations. (R. 25, 28, 59-61, 362-69). This determination was upheld upon reconsideration following a disability hearing by a state agency disability hearing officer. (R. 45-56). A hearing before the Administrative Law Judge ("ALJ") was held on 30 January 2007, at which Claimant was not represented by counsel. (R. 507-15). On 10 July 2007, the ALJ issued a decision denying Claimant's claim. (R. 11-20). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 9) and submitted additional evidence as part of her request (R. 449-506). Claimant was represented by an attorney before the Appeals Council. After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 6 November 2007. (R. 5-8). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at

2

Case 5:08-cv-00011-FL   Document 20   Filed 09/25/08   Page 2 of 18

642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning;

concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to properly apply the special technique for mental impairments; (2) failure to give controlling weight to the opinion of Claimant's treating physician; (3) improper assessment of Claimant's credibility; and (4) relying exclusively on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids") after erroneously finding that Claimant did not suffer from any significant non-exertional impairments. Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 5, 7-8. ("Pl.'s Mem.").

## **FACTUAL HISTORY**

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 16). Next, the ALJ determined that Claimant's residual effects of a kidney transplant with immunosuppressant therapy represented a medically-determinable impairment. *Id.* However, at step three, the ALJ concluded that Claimant did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> The [C]laimant only has a *slight* difficulty in performing her activities of daily living. She has only a *slight* difficulty with social functioning. She gets along

4

fairly well with others and had satisfactory relationships with supervisors and coworkers prior to her physical illness. She has only a *slight* difficulty with maintaining concentration, persistence, and pace related to her preoccupation with her remaining physical problems. She has not had episodes of decompensation of extended duration.

(R. 18) (emphasis in original). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform the full range of light, unskilled work.[1] (R. 16, 20). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible based upon the medical evidence. (R. 18). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as an operations technician. (R. 19). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 19).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant, a high school graduate, was thirty-four years old. (R. 512). Claimant was declared disabled in April 1999 due to listing-level chronic renal failure. After receiving a kidney transplant, the Social Security Administration determined Claimant was no longer disabled. Claimant elected to have disability benefits continued until her hearing with the ALJ. (R. 509). Claimant testified that her kidney

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

"is working fine." (R. 513). However, Claimant explained her kidney medication has affected her bone density, resulting in the breakage of her teeth. *Id.* As a result, Claimant was scheduled for oral surgery to remove all of her teeth.[2] *Id.* Claimant stated further that her kidney medications are changed periodically because they cause vitamin deficiencies. *Id.*

Claimant testified that she is unable to work due to sleeping difficulties, nausea, diarrhea, anxiety, depression, panic attacks and restless leg syndrome. (R. 512-13). Claimant's physicians prescribed various medications for her sleep difficulties and depression; however, Claimant stated all were ineffective. *Id.* Claimant's daily activities include bathing, walking outside, visiting a store to get a drink, reading and vacuuming on occasion. (R. 514).

## DISCUSSION

### I. The additional evidence submitted to the Appeals Council is not material.

The Appeals Council incorporated the following additional evidence into the record: (1) progress notes dated 2000 through 2002 from dermatologist John Cheesborough, M.D. (R. 450-53); (2) 2007 progress and surgical notes from Lake Pine Oral & Facial Surgery (R. 454-68); (3) a progress note from Stephen Smith, M.D., dated 8 January 2007 (R. 469-72); (4) progress notes dated 2000 through 2006 from William LeLiever, M.D., of Central Carolina Ear, Nose & Throat ("CCENT") (R. 473-91); (5) a disability questionnaire completed by Claimant dated 9 November 2005 (R. 494-98); and (6) physical capacities assessment forms completed by Mark Rothman, M.D., dated 19 September 2006, and by Dr. Smith, dated 8 September 2006 (R. 501-02; 505-06). (R. 8). Although the Appeals Council discounted the additional evidence (R. 5), this Court is obliged to review this evidence in determining whether substantial evidence supports the ALJ's

---

[2] Subsequent to the administrative hearing, Claimant had her teeth surgically removed. (R. 457-68).

6

findings. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings").

The Appeals Council must consider additional evidence if (1) the evidence is new; i.e., not duplicative or cumulative of that which is already in the record; (2) the evidence is material; i.e., there exists a reasonable possibility that the new evidence would have changed the outcome; and (3) the evidence "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Wilkins*, 953 F.2d at 96 (citations omitted). In this case, the relevant time period extends from 7 March 2003 (the date of comparison point decision) to 10 July 2007 (the date of the ALJ's decision). (R. 15, 20, 66). The fact that the additional evidence was generated after the ALJ's decision does not automatically disqualify it from consideration. However, the claimant must do more than simply submit medical records which postdate the hearing since the subsequently-generated records, standing alone, are insufficient to satisfy the materiality requirement. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). In particular, the claimant must show how the new evidence relates to the claimant's medical condition as it was at the time of the hearing. *Id.*; *see also Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990) (explaining medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision). However, if the new evidence shows merely that the claimant's condition deteriorated after the administrative hearing, the evidence is not relevant to the claimant's condition during the time at issue. *See Rhodes v. Barnhart*, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*,

176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

As an initial matter, the Court notes that Claimant has not explained the relevance of any of the above evidence and in fact, fails to cite this evidence in her brief. Second, the Court finds the additional evidence immaterial as it would not have changed the outcome of the ALJ's decision. Dr. Cheesborough's notes concern skin issues associated with Claimant's renal failure and predate her kidney transplant. Claimant has not alleged any dermatological impairment. The Lake Pine Oral & Facial Surgery records document the evaluation of Claimant's poor dentition and her full mouth extraction. The ALJ acknowledged Claimant's intent to undergo oral surgery for full mouth extraction. (R. 18). Moreover, the record submitted to the ALJ contained a physician's recommendation that Claimant undergo full mouth extraction as a result of generalized gross tooth decay. (R. 393). The 8 January 2007 progress note from Dr. Smith is duplicative, as this very same document appeared in the record submitted to the ALJ. (R. 18, 395-98). The records from CCENT chronicle Claimant's complaints of sinus problems prior and subsequent to undergoing surgery for chronic sinusitis and nasal polyposis in September 2002. Nothing in these records pertains to Claimant's alleged symptoms. Claimant's disability questionnaire documents Claimant's ability to perform numerous activities of daily living, including grocery shopping, preparing meals, washing floors, doing laundry, dusting and cleaning bathrooms thereby supporting the ALJ's finding that Claimant is capable of light work. (R. 495-96). Finally, the questionnaires completed in 2006 by Claimant's treating physicians,

8

Drs. Rothman and Smith, provide nearly identical responses to the questionnaires completed in 2007 by both physicians and discussed by the ALJ.

II.   **The ALJ did not fail to apply the special technique for mental impairments in accordance with 20 C.F.R. § 404.1520a.**

Claimant contends the ALJ erred in his consideration of her mental impairments. Pl.'s Mem. at 5. Specifically, Claimant contends that the regulations require the completion of a Psychiatric Review Technique Form ("PRTF") and that the findings from this assessment be incorporated into the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.1520a(a)). Defendant counters that the ALJ must comply only with the mode of analysis dictated by the regulations and the PRTF. *See* Mem. in Supp. of Comm'r's Mot. for J. on the Pleadings ("Def.'s Mem.") at 11.

Courts have held that where a claimant presents a colorable claim of mental impairment, the ALJ must have a Psychiatric Review Technique Form ("PRTF")[3] completed and included in the record *or* incorporate its mode of analysis into his findings and conclusions. *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (collecting cases). The required analysis entails rating the degree of a claimant's functional limitation in four broad areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked and extreme. *Id.* § 404.1520a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.*

---

[3] The PRTF follows the special technique for evaluating mental impairments found in 20 C.F.R. § 404.1520a.

Despite Claimant's contention to the contrary, the regulations require only that the ALJ follow the special technique described above and that his written decision

> incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(2). The ALJ's decision indicates he considered the functional areas described in the special technique and their impact on his ultimate conclusion as to Claimant's RFC. Indeed, after summarizing the medical findings by David Dermott, Psy.D., Claimant's former psychologist, the ALJ performed the required ratings analysis of functional limitations. (R. 18, 429-48). In particular, the ALJ determined Claimant's depression and anxiety resulted in "slight" functional limitations impacting activities of daily living, social functioning and concentration, persistence and pace and had no episodes of decompensation of extended duration. *Id.* The ALJ concluded that "[C]laimant's mental limitations may cause her difficulty with some forms of skilled work, but do not limit her ability to perform basic work related activities." (R. 18-19).

Nonetheless, Claimant argues that because Dr. Dermott diagnosed her with major depressive disorder and anxiety disorder and because "no physician or psychologist has stated that [Claimant's] mental symptoms are 'slight,'" the ALJ impermissibly substituted his own opinion for that of a qualified medical expert. Pl.'s Mem. at 6. In particular, Claimant contends "the substantial medical opinion in this case requires a finding that Claimant has significant non-exertional impairments" and the ALJ erred in finding otherwise. *Id.* While it is true that "[i]n the absence of any psychiatric or psychological evidence to support his position, the ALJ simply

does not possess the competency to substitute his views on the severity of [Claimant's] psychiatric problems for that of a trained professional[,]" *Grimmett v. Heckler*, 607 F. Supp. 502, 503 (S.D.W. Va. 1985) (citing *McLain v. Schweiker*, 715 F.2d 866, 869 (4th Cir. 1983), that is not what occurred in this case. Here, the ALJ did not disregard Dr. Dermott's evaluation or his diagnoses. The ALJ acknowledged that testing performed by Dr. Dermott demonstrated Claimant "was an individual unhappy with her family situation and someone with low self-esteem," who "tended to be socially withdrawn and preferred not to participate in group activities." (R. 18, 429, 434-35). The ALJ noted, however, that Claimant's treatment, lasting only two months, occurred in 2005. Moreover, despite Dr. Dermott's findings, the ALJ noted that Claimant failed to "pursue ongoing therapy for her depression or anxiety."[4] (R. 18); *see* 20 C.F.R. § 404.1529(c)(3) (explaining information regarding the types of medications, treatments, and other methods used to alleviate symptoms are "important indicators of the intensity and persistence" of symptoms); *see also Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (inconsistency between a claimant's allegations of severity of condition and actual treatment sought is probative of credibility). Finally, Dr. Dermott assessed Claimant's Global Assessment of Functioning score ("GAF")[5] at 70, which indicates "[s]ome *mild symptoms*...OR some difficulty in social, occupational, or school functioning...but *generally functioning pretty well*, has some meaningful interpersonal relationships." DSM-IV at 32 (bold typeface omitted)

---

[4] Dr. Dermott indicated that Claimant was scheduled for three psychotherapy sessions; however, Claimant failed to attend her last scheduled session. (R.429). While characterizing the clinical profile of Claimant as "valid," Dr. Dermott stated "[t]here may be some tendency on the part of [Claimant] to...exaggerate her symptoms in an effort to obtain help." (R. 433).

[5] The GAF scale ranges from zero to one-hundred and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994).

(emphasis added). Accordingly, the ALJ properly concluded that while Claimant may have "difficulty with some forms of skilled work," (R. 19), she is capable of performing unskilled work. (R. 20); *see Hall v. Harris*, 658 F.2d 260, 266 (4th Cir. 1981) ("Unskilled work denotes work which requires little or no judgment in the performance of simple duties that can be learned on the job in a short period of time."); *see also* S.S.R. 85-15, 1985 WL 56857, at *4 (mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions); *accord* S.S.R. 96-9p, 1996 WL 374185, at *9 (mental activities required by unskilled work include understanding, remembering, and carrying out simple instructions and making simple work-related decisions). For the foregoing reasons, Claimant's argument on this issue is without merit.

### III. The ALJ did not err in evaluating the opinion of Claimant's treating physician.

Claimant contends the ALJ should have accorded controlling weight to the opinions of Claimant's treating physicians, Dr. Rothman and Dr. Smith. Pl.'s Mem. at 7-8.

The opinion of a treating physician is generally entitled to great weight. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (per curiam). The underlying rationale is that the opinion of a treating physician "reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Id.* However, appropriate support in the record must warrant deference to the treating physician's opinion. In particular, a treating physician's opinion on the nature and severity of the claimed impairment is accorded controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d). Thus, "[b]y negative implication, if a physician's opinion is not

12

supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro v. Apfel*, 270 F.3d 171,178 (4th Cir. 2001) (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"). In fact, an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source...if he sufficiently explains his rationale and if the record supports his findings." *Wireman v. Barnhart*, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). The regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005).

The medical opinions at issue appeared in identical questionnaires completed by Dr. Smith and Dr. Rothman dated 24 February 2007 and 1 March 2007, respectively, wherein both physicians indicated Claimant's RFC was more limited than that found by the ALJ. (R. 19, 412-17, 419-24). As the ALJ acknowledged, Dr. Smith indicated Claimant could perform the lifting and carrying required of light work but not the required standing and walking due to fatigue; Dr. Rothman indicated Claimant could perform less than a full range of sedentary work but provided no reason for his belief. (R. 19, 414, 419). However, the ALJ explained that the reason for not relying on this evidence was due to the lack of support for such limitations in the phsyicians' treatment notes and the opinions of the state agency physicians. The physicians' treatment notes indicate no significant problems with Claimant's kidney transplant. (R. 19). In fact, their records consistently indicate that Claimant was doing "very" or "quite" well (R. 224,

13

226, 228, 281, 284, 286, 291, 293, 296, 302, 399), maintained excellent kidney function (R. 279, 285, 299, 400) and had a good energy and activity level (R. 280, 284, 303). Finally, the ALJ explained that the treatment notes "do not mention severe fatigue." (R. 19). Upon review of the medical records, the Court found only one notation by Dr. Smith addressing Claimant's allegations of fatigue. *See* (R. 401) (noting in a 20 January 2006 progress note that Claimant "feel[s] drained and fatigued much of the time). However, the ALJ's failure to acknowledge Dr. Smith's January 2006 notation is harmless as Dr. Smith's progress note provides no insight as to work restrictions related to Claimant's fatigue. In light of the lack of substantiation for the physicians' opinions, the ALJ was entitled to decline to afford controlling weight to the treating physician's opinion. *See Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir.1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted).

Also, the ALJ explained that he relied upon the opinions of state agency medical experts who reached conclusions consistent with those of the ALJ. (R.19, 362-76). Findings by state agency medical personnel regarding the nature and severity of an individual's impairments cannot be ignored by the ALJ and the ALJ gave these findings appropriate weight. *See* S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). The ALJ sufficiently explained his rationale for weighing the medical record and the opinions contained therein and his explanations are supported by substantial evidence. Accordingly, this assignment of error is without merit.

14

## IV. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to analyze her subjective complaints of pain in the manner mandated by *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). *See* Pl.'s Mem. at 8-9. This Court disagrees.

*Craig* requires an ALJ to evaluate subjective claims of pain and other symptoms according to a two-step process. *Craig*, 76 F.3d at 594; *see also Hines v. Barnhart*, 453 F.3d 559, 564-65 (4th Cir. 2006). First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

Claimant contends that the ALJ failed to determine at step one of the credibility determination whether Claimants impairments "could reasonably be expected to produce **the actual pain in the amount and degree alleged....**" Pl.'s Mem. at 18 (emphasis in original). However, the Court finds that the ALJ followed the proper legal standard when evaluating

15

Claimant's subjective symptoms. The ALJ found expressly that "[C]laimant's medically determinable impairments... could have reasonably been expected to produce some of the alleged symptoms. . . ." (R. 18). It appears therefore that the ALJ considered the extent to which Claimant's impairment could be expected to produce symptoms of pain and other alleged symptoms, and thus successfully satisfied the first step in the evaluation of Claimant's credibility. Next, the ALJ fulfilled the second step by finding that "[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." *Id.* In determining Claimant's credibility, the ALJ considered objective medical opinions and laboratory findings, Claimant's activities of daily living, attempts to control symptoms with medication, as well as Claimant's own statements. (R. 18-19). These factors provide sufficient evidence to support the ALJ's credibility determination. Additionally, the ALJ gave specific findings by detailing the evidence considered and relied upon in determining Claimant's credibility and RFC. *Id.* By basing these findings on the entire record, including the objective medical evidence and several subjective factors, the legal standard for evaluating subjective symptoms, as established in S.S.R. 96-7p, was proper and the findings are supported by substantial evidence. Accordingly, Claimant's argument is without merit.

**V.     The ALJ did not err in relying on the Grids.**

Finally, Claimant argues that the ALJ erred by concluding that she retained the RFC to perform a full range of light, unskilled work. As such, Claimant contends further that the ALJ should have consulted a vocational expert rather than mechanically applying the Grids in reaching his decision. *See* Pl.'s Mem. at 8. This Court disagrees.

If a claimant has no non-exertional impairments that prevent her from performing the full range of work at a given exertional level, the ALJ may rely solely on the Grids to satisfy his burden of proof in step five of the sequential analysis. *Coffman*, 829 F.2d at 518; *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). In the case of a claimant who suffers from non-exertional impairments or a combination of exertional and non-exertional impairments that prevent her from performing a full range of work at a given exertional level, the Grids may be used only as a guide. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must prove through vocational expert testimony that jobs exist in the national economy which the claimant can perform. *See Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989); 20 C.F.R. § 404.1569a.

In the instant case, the ALJ found that Claimant's RFC allowed her to perform the full range of light, unskilled work and that her RFC was not reduced by non-exertional limitations. (R. 16). However, relying on the opinions of her treating physicians, Claimant alleges that her RFC should include non-exertional limitations and specifically, a non-production, low-stress job requiring simple, repetitive, routine tasks ("SRRT") with little or no exposure to the public. Pl.'s Mem. at 8. As discussed previously, the ALJ's decision to accord little weight to the opinions of Dr. Rothman and Dr. Smith is supported by substantial evidence. As such, the finding directed by the Grids is proper and testimony from a VE was not required.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 25th day of September, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge